[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 23, 2005
THOMAS K. KAHN
CLERK

_____

No. 05-13313
Non-Argument Calendar

_____

BIA No. A96-088-316

YVES ALVARD,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

(December 23, 2005)

Before TJOFLAT, BIRCH and MARCUS, Circuit Judges.

PER CURIAM:

Petitioner-appellant, Yves Alvard, seeks review of the Board of Immigration

Appeals' ("BIA") decision adopting and affirming the Immigration Judge's

("IJ's") order finding him removable and denying his application for asylum,

withholding of removal under the Immigration and Nationality Act ("INA") and

the United Nations Convention on Torture ("CAT"), 8 U.S.C. §§ 1158, 1231; 8

C.F.R. 208.16(c). We DISMISS in part and DENY in part the petition for review.

## I. BACKGROUND

On 6 November 2002, the Immigration and Naturalization Service ("INS")[1]

issued a Notice to Appear, charging Alvard with removability under 8 U.S.C. §

1182(a)(6)(A)(i) for being an alien present in the United States without having

been admitted or paroled. Alvard, a native and citizen of Haiti, claims he entered

the United States near Miami, Florida, on about 27 February 2002. His application

for asylum and withholding of removal based on his political opinion was received

on 18 September 2002.

Alvard appeared before the IJ, conceded his removability as charged, and

applied for asylum, withholding of removal, or relief under CAT. In his

application, Alvard indicated that neither he nor members of his family had ever

belonged to or been associated with any political organizations or groups in his

---

[1]On November 25, 2002, President Bush signed into law the Homeland Security Act of 2002, which created a new Department of Homeland Security, abolished the INS, and transferred its functions to the new department. See 6 U.S.C. §§ 201-298. Because this case was initiated while the INS was still in existence, we refer to the INS rather than to the DHS.

home country. In the personal statement attached to the application, however, Alvard provided details of his association with and participation in the Fanmi Lavalas ("FL") party in Haiti. According to this statement, on 30 November 2001, Alvard attended a meeting at which he expressed dissatisfaction with the lack of progress and economic development achieved by the FL government. Alvard claimed that on 12 January 2002, two gunmen abducted him and drove him to a remote location where they removed his shirt, bound his hands, tied him to a tree branch, and whipped him with an electrical wire. These abductors told Alvard that he was being beaten as a punishment for not respecting the FL.

After the attack, which Alvard claims caused him to lose consciousness, he feared returning to Port-au-Prince. Alvard reportedly moved around Haiti for six weeks and finally left the island by boat in February 2002, entering the United States soon thereafter. His application states, "I am asking for political asylum because I am afraid to return to Haiti. I fear that if I return I may be arrested, beaten, and tortured again or killed by members of the Lavalas party." R1 at 127. Alvard wrote that, of the twenty-two persons who had attended the November meeting, four had been killed for expressing dissatisfaction with the party.

An asylum application hearing was held on 14 January 2004. The IJ began by noting that, although Alvard's application for asylum appeared to have been filed within the one-year limitation period, "it is, none-the-less, the responsibility

3

of [Alvard] to demonstrate that it was timely submitted." Id. at 62. Alvard testified that he left Haiti on 22 February 2002 because he was being persecuted and arrived in the United States on 27 February, but he offered no other evidence of his date of entry. Apart from his own testimony, the only evidence Alvard submitted in the course of the hearing was a birth certificate confirming that he had been born in Port-au-Prince. He presented no other witnesses.

Alvard again testified that while living in Port-au-Prince he did not belong to any group or organization. He then explained that he had attended the November 2001 meeting because he had been "with some people and they wanted to speak with us about some activities," such as, "security and . . . how the justice system was doing." Id. at 67. He further explained that he did not work directly with the FL, but "was serving as an activist . . . if something needed to be done, if something needed to be said, [he] was there to be part of that and to do it." Id. He testified that he had met with the FL party before the November 2001 meeting, that he had been an activist with them since the end of 1999, and that he generally met with the FL group at the end of each month. He said that he was an FL activist because he "believed in justice and the security that [the party] wanted to provide." Id. at 68. Alvard explained the discrepancy in his testimony regarding his lack of association with any political organization stating that "[he] was not associated in, in the sense that [he] was a prominent member, but [he] was involved." Id.

4

Alvard testified that he had expressed his dissatisfaction "with the level of progress . . . being experienced throughout the country" at the November 2001 meeting  Id. at 69.  Alvard then restated the facts of his January 2002 abduction and beating as given in his application, this time adding that he was abducted on the way home from another meeting.  Nevertheless, he still attributed the attack to his expression at the November meeting.

Alvard did not claim to have suffered any further persecution during the month and a half he remained in Haiti (but outside Port-au-Prince)  before coming to the United States.  Nevertheless, Alvard said that if he returned to Haiti, he thought the FL would "somehow grab [him] again, beat [him] up, and perhaps even kill [him]."  Id. at 77-78.  Alvard testified that, despite his dissatisfaction with the FL, he continued to support the party because he "believed in progress."  Id. at 79.  He also said that he expressed his dissatisfaction with the FL because he hoped that the party would "come back with other ideas."  Id.  Alvard clarified that once he became dissatisfied with the FL party, he did not support it "with the same mind set," but he did not consider supporting any other party.  Id.

With regard to the beating incident, Alvard testified that he did not know the two men who abducted him.  He explained that he did not report the incident to the police because "police [are] the reason for a lack of security.  They, they are part of that institution."  Id. at 84.  Then, even though nothing further happened to him in

5

the weeks following the 12 January incident, Alvard explained that he came to the United States because "when these types of things happen, it's better for you to leave the country. Id. at 80.

The IJ ordered Alvard removed from the United States to Haiti, and denied his application for asylum and withholding of removal.[2] The IJ noted that although Alvard claimed to have entered the United States on or about 27 February 2002, he had failed to establish that his application for asylum was timely submitted within the one-year period of limitation. The IJ noted that, despite the fact that Alvard was at the time living with one of his sisters and had a brother and another sister living in the United States whom he might have called upon to testify, Alvard had failed to substantiate his asserted date of entry.

In its merits findings, the IJ found Alvard's testimony generally to be "somewhat contradictory and illogical and totally unsupported." Id. at 47. Pointing out, among other things, that Alvard first stated that he did not associate or belong to any group but later claimed to have been an activist who did whatever needed to be done for the FL party, the IJ found Alvard had not adequately explained the discrepancies in his testimony. The IJ also found that Alvard failed to establish any evidence that he had, in fact, suffered any injury or an attack or

---

[2]The IJ also considered the U.S. Department of State Country Report on Human Rights Practices of Haiti in 2002, issued in March 2003. See R1 at 41.

6

that he had received any medical treatment in January 2002. Finally, the IJ concluded that Alvard's statement that he failed to attempt to bring the attackers to justice because the police were part of the problem, undermined his assertion that he was generally a supporter of the FL. Finally, the IJ noted that because Alvard did not know the identity of his alleged persecutors, there was no evidence that they were officials or persons acting in an official capacity.

The IJ concluded that Alvard had failed to establish that his application for asylum was timely submitted, that he suffered from past persecution, or that he had a well-founded fear of future persecution, and therefore, that he was ineligible for asylum, and "even if eligible . . . [had] failed to meet [the] burden of proof required [for] that relief." Id. at 49. The IJ further found that because Alvard had failed to meet the lower burden of proof required for asylum, he had also failed to establish that it was more likely than not that his life or freedom would be threatened in Haiti on account of any statutorily protected ground, and that he had therefore failed to meet the burden of proof required for withholding of removal. Finally, the IJ found that Alvard had failed to meet the burden of proof required for relief under CAT because, even though he was allegedly beaten with an electrical cord, he had "failed to establish that he [had been] tortured by the act, acquiescence, or consent of an official or a person acting in an official capacity. Id.

7

Alvard timely appealed the IJ's decision to the BIA. In his notice and supporting brief, he argued that the IJ erred by failing to grant asylum, but he did not address the issue of timeliness or his claim for CAT relief. The BIA adopted and affirmed the IJ's decision.

Alvard filed the present petition for review and now argues that he presented substantial evidence to support his application for asylum, withholding of removal, and CAT relief. The government argues that we lack jurisdiction to review the IJ's conclusion that Alvard's asylum application was untimely and that Alvard has failed to present the compelling evidence necessary to reverse the IJ's decision (adopted by the BIA) denying withholding of removal and protection under CAT.

## II. DISCUSSION

When the BIA issues a decision, we review only that decision, "except to the extent that it expressly adopts the IJ's opinion." Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). If, as in this case, instead of rendering its own opinion, the BIA adopts the IJ's opinion in full, we review the IJ's decision. D-Muhumed v. U.S. Atty. Gen., 388 F.3d 814, 818 (11th Cir. 2004).

A. Jurisdiction to Review BIA's Conclusion as to Timeliness

The government argues that we lack jurisdiction to consider Alvard's arguments regarding asylum. "We review subject matter jurisdiction de novo." Gonzalez-Oropeza v. U.S. Att'y Gen., 321 F.3d 1331, 1332 (11th Cir. 2003) (per

8

curiam).  Under 8 U.S.C. § 1158(a)(2)(B), an asylum applicant must show by clear and convincing evidence that the application for asylum was filed within one year of the alien's arrival in the United States.  Although a late application for asylum can be considered if changed or extraordinary circumstances exist, the evaluation of those circumstances is committed to the sole discretion of the Attorney General.  8 U.S.C. §§ 1158(a)(2)(D)-(a)(3).  The decision of the Attorney General "is not reviewable by any court."  Fahim v. U.S. Att'y Gen., 278 F.3d 1216, 1217 (11th Cir. 2002) (per curiam); see also 8 U.S.C. § 1158(a)(3); Chacon-Botero v. U. S. Att'y Gen., 427 F.3d 954, 957 (11th Cir. 2005) (per curiam) (confirming that the passage of the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231 (2005) did not vest us with jurisdiction to review a determination that an asylum application was untimely).

Here, the IJ found that Alvard's application was untimely.  Alvard failed even to address this issue before the BIA, much less to demonstrate changed or extraordinary circumstances.  Accordingly, we lack jurisdiction to consider Alvard's asylum arguments.

B. Exhaustion of Administrative Remedies

On appeal, Alvard argues that he met his burden for CAT relief and withholding of removal.  Even though the government responds to the merits of these claims, a review of the record reveals that Alvard failed to exhaust his

administrative remedies with respect to his claim for CAT relief and possibly with respect to his claim for withholding of removal as well. We are obligated to inquire into subject-matter jurisdiction "whenever it may be lacking." Chacon-Botero, 427 F.3d at 956 (quotations and citations omitted). "The exhaustion requirement applicable to immigration cases is found in 8 U.S.C. § 1252(d)(1), which provides that a court may review a final order of removal only if the alien has exhausted all administrative remedies available to the alien as of right." Sundar v. INS, 328 F.3d 1320, 1323 (11th Cir. 2003) (quotations, alterations, and citations omitted). "We have interpreted that requirement to be jurisdictional, so we lack jurisdiction to consider claims that have not been raised before the BIA." Id.

Alvard made no reference to CAT relief in either his notice of appeal or the brief he presented to the BIA. Therefore, he failed to exhaust his administrative remedies with respect to CAT relief. Accordingly, we lack jurisdiction to hear his CAT claims on appeal.

In his notice of appeal to the BIA, however, Alvard did at least mention "withholding of removal" in his statement of the issues. R1 at 6. Further, the BIA adopted and affirmed the IJ's decision, which included a finding as to the withholding of removal claim. Therefore, for purposes of this appeal, we find that Alvard exhausted his administrative remedies with respect to withholding of

10

removal, and that we do have jurisdiction to consider this aspect of his petition for review.

C. Withholding of Removal

To the extent that a decision was based on a legal determination, review is de novo. Mohammed v. Ashcroft, 261 F.3d 1244, 1247 (11th Cir. 2001). Factual determinations are reviewed under the substantial evidence test. Al Najjar, 257 F.3d at 1283-84 (citation omitted). The substantial evidence test is "deferential" and does not allow "re-weigh[ing] the evidence from scratch." Mazariegos v. Office of the U.S. Att'y Gen., 241 F.3d 1320, 1323 (11th Cir. 2001). We "must affirm the [IJ's] decision if it is 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Al Najjar, 257 F.3d at 1284. "To reverse the IJ's fact findings, we must find that the record not only supports reversal, but compels it." Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003).

An alien seeking withholding of removal under the INA must show that his life or freedom would "more-likely-than-not" be threatened upon return to his country because of his race, religion, nationality, membership in a particular social group, or political opinion. Mendoza, 327 F.3d at 1287; see also 8 U.S.C. § 1231(b)(3); 8 C.F.R. § 208.16(b). This standard is more stringent than the "well-founded fear" standard for asylum. Mazariegos, 241 F.3d at 1324 n.2. Thus, an

11

inability to meet the well-founded fear standard for asylum generally precludes qualification for withholding of removal.  See Al Najjar, 257 F.3d at 1292-93.

An alien who arrives in or is present in the United States may apply for asylum.  8 U.S.C. § 1158(a)(1).  The Attorney General has discretion to grant asylum if the alien meets the INA's definition of a "refugee."  8 U.S.C. § 1158(b)(1)(A).  A "refugee" is:

> any person who . . . is unable or unwilling to return to, and is unable or unwilling to avail himself . . . of the protection of, [his country of nationality or, if he has none, his country of habitual residence] because of persecution or a well-founded fear of persecution on account of . . .  political opinion.

8 U.S.C. § 1101(a)(42)(A).

The asylum applicant carries the burden of proving statutory "refugee" status.  See Al Najjar, 257 F.3d at 1284.  To establish asylum eligibility, the applicant must establish (1) past persecution on account of a statutorily listed factor, or (2) a "well-founded fear" that the statutorily listed factor will cause such future persecution.  8 C.F.R. § 208.13(a), (b); Al Najjar, 257 F.3d at 1287. "Demonstrating such a connection requires the alien to present specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution on account of . . . an opinion [or other statutory factor]."  Al Najjar, 257 F.3d at 1287 (quotations and citation omitted).  An applicant must show not only that he has a political opinion, but that he was persecuted because of that

12

opinion. INS v. Elias-Zacarias, 502 U.S. 478, 483, 112 S. Ct. 812, 816 (1992).

Although neither the INA nor the regulations define "persecution," we have

described it as "an extreme concept, requiring more than a few isolated incidents of

verbal harassment or intimidation, and that mere harassment does not amount to

persecution." Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1231 (11th Cir. 2005)

(per curiam) (quotations and citations omitted).

To establish a "well-founded fear," "an applicant must demonstrate that his

or her fear of persecution is subjectively genuine and objectively reasonable." Al

Najjar, 257 F.3d at 1289. "'An imputed political opinion, whether correctly or

incorrectly attributed,' may constitute a ground for a 'well-founded fear' of

political persecution within the meaning of the INA." Id. (citations omitted). As

with past persecution, however, if the IJ finds that the applicant could avoid a

future threat by relocating to another part of his country, he cannot demonstrate a

well-founded fear of persecution. See 8 C.F.R. § 208.13(b)(1)(i)(B), (b)(2)(ii); id.

§ 208.16(b)(1)(i)(B), (b)(2).

"The testimony of the applicant, if credible, may be sufficient to sustain the

burden of proof without corroboration." 8 C.F.R. §§ 208.13(a), 208.16(b). On the

other hand, "an adverse credibility determination alone may be sufficient to

support the denial of an asylum application." Forgue v. U.S. Att'y. Gen., 401

F.3d 1282, 1287 (11th Cir. 2005). "The weaker an applicant's testimony . . . the

13

greater the need for corroborative evidence." Yang v. U.S. Att'y Gen., 418 F.3d 1198, 1201 (11th Cir. 2005). In making an adverse credibility determination, however, an IJ must offer "specific, cogent reasons." Forgue, 401 F.3d at 1287. Further, "[a]n adverse credibility determination does not alleviate the IJ's duty to consider other evidence produced by an asylum applicant." Id. Nevertheless, when the IJ enumerates an applicant's inconsistencies and is supported by the record, "we will not substitute our judgment for that of the IJ with respect to its credibility findings." D-Muhumed, 388 F.3d at 819.

Here, substantial evidence supports the IJ's decision denying Alvard withholding of removal under the INA. The IJ offered specific, cogent reasons based on the record in support of his conclusion that Alvard's testimony was "somewhat contradictory and illogical and totally unsupported." The IJ pointed to discrepancies in Alvard's testimony concerning his association with a political organization, his claim that the attack came in retaliation for a November meeting but occurred after a January meeting, and his reasons for failing to report the attack to the police. The IJ also emphasized the complete lack of supporting evidence for Alvard's testimony concerning both his date of entry into the United States and the details of his attack and medical treatment. Accordingly, the IJ's findings are supported by substantial evidence and reversal is not compelled.

14

Further, even if Alvard were able to establish past persecution or a well-founded fear of future persecution, the record supports the possibility of his reasonable relocation within Haiti, undercutting the presumption that his life or freedom would be threatened upon return to his country. By his own account, for one and a half months following the attack, Alvard stayed without incident in Haiti. Therefore, even if Alvard had established eligibility for asylum he could reasonably have been expected to avoid future threat to his life or freedom by relocating to another part of the country.

### III. CONCLUSION

Alvard appeals the Board of Immigration Appeals' ("BIA") decision adopting and affirming the Immigration Judge's ("IJ's") order finding him removable and denying his application for asylum, withholding of removal under the INA and CAT. Having determined we lack jurisdiction over both the asylum and CAT claims, we **DISMISS** Alvard's petition as to those issues. Because we find that the IJ's findings are supported by substantial evidence, we **DENY** the petition for withholding of removal.